# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KALPESHKUMAR PATEL and MAGANBHAI PATEL, | )<br>)<br>) |
| Plaintiffs, | ) No. 15-cv-486 |
| v. | )<br>) Judge Ronald A. Guzmán |
| LEON RODRIGUEZ, Director, U.S. Citizenship and Immigration Services and JEH JOHNSON, Secretary, Department of Homeland Security, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The Court grants Defendants' motions to dismiss [14] and [21]. Plaintiffs' claim to compel the USCIS to issue 80,000 U-visas *nunc pro tunc* is dismissed with prejudice. Their claim for unreasonable delay regarding their U-visa applications is dismissed without prejudice. And their claim for their families' parole is dismissed as moot. Civil case terminated.

## STATEMENT

Plaintiffs Kalpeshkumar and Maganbhai Patel ("Plaintiffs") filed suit against the heads of the United States Citizenship and Immigration Services ("USCIS") and the Department of Homeland Security ("DHS") (collectively "Defendants") on January 19, 2015, requesting declaratory and mandamus relief with regard to their waitlisted applications for nonimmigrant "U-status." Defendants subsequently filed the instant motion to dismiss, claiming that the Court lacks jurisdiction to hear Plaintiffs' claims and that the claims are insufficient under Rule 12(b)(6).

**BACKGROUND**

I.  **Statutory and Regulatory Framework**

Immigration is governed by the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1503, and its accompanying regulations. In October 2000, Congress enacted the Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 105-386, 114. Stat. 1464, which amended the INA and created a new nonimmigrant visa classification for certain aliens who have been victims of serious crimes. *See* 8 U.S.C. § 1101(a)(15)(U). Five years later, Congress passed the Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. 109-162, 828, 119 Stat. 3066, which directed the Secretary of Homeland Security to promulgate regulations implementing Section 1101(a)(15)(U).

The USCIS published those rules — the "U-visa regulations" — in 2007. In essence, they allow an alien who both (i) falls victim to a serious crime and (ii) provides meaningful assistance to law enforcement, to apply for a U-visa. *See* 8 C.F.R. § 214.14(d)(2); 8 U.S.C. § 1184. There is, however, a cap on the number of U-visas that may be issued each year, 8 U.S.C. § 1184(p)(2)(B), and that cap has been reached every year since 2009, (*see* Pl.'s Br. [Dkt. # 19] at 4), which leaves many U-visa applicants waiting. Anticipating this situation, the USCIS further provided that any U-visa applicants whose petitions are denied because of the cap will be placed on a waiting list and granted "deferred action"[1] or "parole,"[2] allowing them to remain in the country and maintain employment. 8 C.F.R. § 214.14(d)(2). Better still, the regulations also provide that qualifying family members of waitlisted applicants will receive deferred action or parole, too. *Id.*

---

[1] Deferred action is a discretionary determination to defer a removal action of an alien.

[2] Parole status allows an otherwise inadmissible alien to remain the country without a visa.

In the instant case, Plaintiffs claim they and their families fit the above criteria, but that the USCIS is frustrating the process by delaying their U-visa applications and wrongfully withholding parole for their families.

## II. Facts

On November 13, 2012, Plaintiffs were victims of an armed robbery in Indiana. (Compl., ¶ 15, 16.) Roughly six months later, they each applied for U-visas but were informed that none were available and that their applications would be put on the waiting list. (*Id.*) Both were then granted deferred action and authorized to work in the United States. (*Id.*) Unfortunately, though, being in the United States is somewhat of a catch-22 for them: Kalpeshkumar's daughter and Maganbhai's wife are both in India and are otherwise inadmissible aliens. (*Id.* ¶¶ 19-20.) And because neither family member is in the United States, the USCIS determined that they did not qualify for deferred action, leaving parole as the only avenue for admission. (*Id.* ¶ 28.) Plaintiffs have since been waiting for that to happen, or, in the alternative, to have their U-visa applications approved. But after two years, they are tired of waiting and decided to sue.

Although it is unclear from the Complaint, Plaintiffs appear to assert two distinct causes of action. First, Plaintiffs contend that the USCIS delayed promulgating U-visa regulations for eight years despite a congressional mandate to do so since October 2000, and that their placement on the waiting list for U-visas was caused by that delay. (*Id.* ¶¶ 31, 32.) Moreover, on Plaintiffs' account, because the USCIS is required to issue 10,000 U-visas per year, it follows that there is a backlog of 80,000 unused U-visas. (*Id.*) Accordingly, they seek relief under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA") (codified in scattered sections of 5 U.S.C.), and request the Court to compel the USCIS to issue 80,000 U-visas *nunc pro tunc*. (Compl. at 9.)

Second, Plaintiffs argue that irrespective of their U-visa applications, the USCIS is required to grant their families parole, since 8 C.F.R. § 214.14(d)(2) provides that qualifying family members of waitlisted applicants will be granted either deferred action or parole as well. (Compl. ¶¶ 33-36.) Thus, they seek relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, the Mandamus Act, and the APA, and request the Court to (i) declare the USCIS's practice of not automatically granting parole to qualifying family members as "arbitrary and capricious," and (ii) compel the USCIS to grant parole to their qualifying family members. (Compl. at 9.)

## STANDARD OF REVIEW

For purposes of a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor. *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, the complaint must set forth a "'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citations omitted). A Rule 12(b)(1) motion, in contrast, challenges federal jurisdiction, and the plaintiff bears the burden of establishing the elements necessary for jurisdiction, including standing, have been met. *Scanlan*, 669 F.3d at 841-42. In ruling on a 12(b)(1) motion, the court may look outside of the complaint's allegations and consider whatever evidence has been submitted on the issue of jurisdiction. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

## DISCUSSION

Defendants present several interrelated challenges to Plaintiffs' claims. First, Defendants assert that the Court lacks jurisdiction to hear this case under the APA and the Mandamus Act. Second, Defendants contend that Plaintiffs lack Article III standing. And lastly, they argue that

even if Plaintiffs' claims were somehow reviewable, they would still fail under Rule 12(b)(6). The Court will address each issue in turn.

**I.     Jurisdiction**

    **(a)**    <u>The APA and the Mandamus Act</u>

Courts can do almost nothing without first having subject-matter jurisdiction over a case. *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004). To that end, Plaintiffs allege jurisdiction under several statutes, but only two are relevant to this motion: the APA and the Mandamus Act.[3] Section 702 of the APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Section 706 of the APA further provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—(1) compel agency action unlawfully withheld or unreasonably delayed.

5 U.S.C. § 706(1). While the APA does not itself grant subject-matter jurisdiction to review agency action, the federal-question statute, 28 U.S.C. § 1331, in conjunction with the APA does. *Califano v. Sanders*, 430 U.S. 99, 105 (1977). Jurisdiction under the Mandamus Act is more straightforward: "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

---

[3] Plaintiffs assert jurisdiction under the INA and the Declaratory Judgment Act, but neither confers independent jurisdiction. *See* 8 U.S.C. § 1329 ("[n]othing in this section [of the INA] shall be construed as providing jurisdiction for suits against the United States or its agencies or officers"); *Schilling v. Rogers*, 364 U.S. 666, 678 (1960) (explaining that the Declaratory Judgment Act is not an independent source of federal jurisdiction).

5

At first glance, Plaintiffs allege precisely the sorts of claims contemplated by both statutes: they ask the Court to compel the USCIS to take action on their allegedly delayed U-visa applications and to grant their families parole that has been unlawfully withheld. Defendants, however, argue that agency actions that are either "nonfinal" or "discretionary" are beyond the Court's jurisdiction. *See, e.g., Pittson Coal Group v. Sebben*, 448 U.S. 105, 121 (1988) (explaining that mandamus relief can be granted only to compel the performance of a clear, nondiscretionary duty); 5 U.S.C. § 704 (limiting judicial review under the APA to "final" agency action); 5 U.S.C. § 701(a) (precluding judicial review under the APA where agency action is discretionary by law). And since Plaintiffs' applications are still pending, and the decision to deny or grant U-visas/parole is discretionary, Defendants believe that the Court lacks the power to adjudicate this matter. Defendants are mistaken.

Putting aside whether the challenged actions are final or discretionary, courts in this circuit and others are split on whether these issues are properly considered jurisdictional to begin with.[4] A careful analysis is therefore appropriate. At the outset, it is important to distinguish "true jurisdictional limitations [from] other types of rules." *Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 854, 851 (7th Cir. 2012). "Because the consequences that attach to the jurisdictional label may be so drastic," the Supreme Court has "tried in recent cases to bring some discipline to the use of this term." *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011). In *Henderson* itself, the Court held that "a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity." *Id.* (citation omitted). In contrast, rules that

---

[4] *Compare Olayan v. Holder*, 1:08-cv-715-RLY-DML, 2009 U.S. Dist. LEXIS 12825, at *8-9 (S.D. Ind. Feb. 17, 2009) (holding that courts lack jurisdiction under the APA where the challenged action is nonfinal) *with Sutton v. Napolitano*, 986 F. Supp. 2d 948, 952 (W.D. Wis. 2013) (finding that "finality" and "discretionary" are merits concerns); *see also Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 544-45 (S.D.N.Y. 2008) (detailing the split of authority and cataloguing cases across circuits).

define the kind of conduct a statute reaches, for example, are essentially defining the kind of conduct a statute prohibits, which goes to the merits of a dispute, not to the Court's jurisdiction. *Morrison v. Nat'l Aus. Bank Ltd.*, 561 U.S. 247, 130 (2010).

In light of these principles, Defendants' argument fails for the simple reason that the APA is not a jurisdiction-conferring statute, *Califano,* 430 U.S. at 10, and by implication it does not restrict jurisdiction the Court otherwise has. Of course, there is a "strong presumption" that judicial review of administrative action is available only for final, nondiscretionary acts. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). But these concerns go to a plaintiff's cause of action, not courts' adjudicatory capacity. *See Califano*, 430 U.S. at 107; *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C. Cir. 2006) (holding that the APA neither expands nor restricts courts' capacity to challenges to administrative action); *Reliable Automatic Sprinkler Co. v. Consumer Prods. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir. 2003) (explaining that "finality" and "discretionary" are merits considerations rather than jurisdictional).[5]

Defendants, of course, disagree and suggest that the Court adopt the contrary view, which marshals support from other circuits. *See, e.g., Belle Co. v. U.S. Army Corps of Engineers*, 761 F.3d 383, 388 (5th Cir. 2014) (finding that "finality" is a jurisdictional prerequisite); *Mamigonian v. Biggs*, 710 F.3d 936, 941-42 (9th Cir. 2013) (same). But the cases on which Defendants rely do not contemplate the recent shift in the Supreme Court's views on jurisdiction, nor do they address the holding in *Califano* that the APA does not confer jurisdiction. Moreover, while the Seventh Circuit has not explicitly weighed in on this subject, its holding in *Ahmed v. Department of Homeland Security*, 328 F.3d 383 (7th Cir. 2003) suggests that it would follow

---

[5] Final agency action requirements can be jurisdictional in other statutes that, unlike the APA, confer jurisdiction on federal courts. *See, e.g., Weinberger v. Salfi*, 422 U.S. 749, 766 (1975) (holding that the "final decision" requirement of a section of the Social Security Act that confers subject-matter jurisdiction on district courts is a "statutorily specified jurisdictional prerequisite").

the above principles. As an initial matter, the *Ahmed* court noted that "[n]o one has suggested that [plaintiff's] APA claim seeking to compel a federal agency [to take action] . . . did not fall under the general federal-question jurisdiction conferred in 28 U.S.C. § 1331." *Id.* at 385. The court went on to explain:

> In our view, it is necessary to distinguish between the court's power to adjudicate the petition and the court's authority to grant relief. Only the former necessarily implicates the subject-matter jurisdiction of the court; the latter will depend on whether the statute on which the plaintiff is relying imposes a clear duty on the officer or employee of the United States.

*Id.* at 385-86. Although the Seventh Circuit ultimately dismissed the petitioner's claims, it affirmed that the district court was empowered to adjudicate the APA claim before it, which is in keeping with the principles articulated in *Henderson, Trudeau*, and *Reliable Automatic Sprinkler Company*. Accordingly, the Court declines to dismiss Plaintiffs' claims for lack of subject-matter jurisdiction under the APA. *See Iddir v. INS*, 301 F.3d 492 496 (7th Cir. 2002) (explaining that there is a presumption in favor of judicial review of administrative acts and that courts ordinarily resolve ambiguities in favor of jurisdiction to hear aliens' grievances); *Quinn v. Gates*, 575 F.3d 651, 654-55 (7th Cir. 2009) (noting the Supreme Court's recent shift in its views on jurisdiction, and stating that "describing reviewability as 'in effect' jurisdictional, is precisely the kind of 'drive-by jurisdictional ruling' that [the Court] tells us to disregard.").

Defendants' jurisdictional challenge fares no better under the Mandamus Act. The proper test for determining subject-matter jurisdiction in this respect is whether the claim is either clearly "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial or frivolous." *Ahmed,* 328 F.3d at 386-87 (7th Cir. 2003) (citing *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)). There is no indication, and Defendants do not assert, that Plaintiffs' mandamus claim was made solely to obtain jurisdiction or that it is wholly insubstantial or

frivolous. Accordingly, the Court may adjudicate it. *See LaSalle Nat. Trust, N.A. v. ECM Motor Co.*, 76 F.3d 140, 143 (7th Cir 1996) (noting that only the most extreme cases will fail the mandamus jurisdictional test).

**(b)** <u>Standing and Plaintiffs' Claim for U-Visas</u>

The inquiry does not end there, though: federal courts' jurisdiction also depends on whether a plaintiff has constitutional standing. *Banks v. Sec'y of Ind. Family & Soc. Servs. Admin.*, 997 F.2d 231, 237 (7th Cir. 1993). To establish standing, a plaintiff must show the following: (1) a violation of a concrete, particular, and legally-protected interest; (2) a causal relationship between the defendant's conduct and the alleged injury; and (3) that a favorable decision by the court would redress the alleged harm. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). Defendants challenge Plaintiffs' standing to bring their claim for U-visas in every respect, but for the sake of brevity, the Court will focus on the most dispositive issue: redressability.

Above all, Plaintiffs lack standing to bring their U-visa claim because the requested relief is illusory. The INA caps the number of U-visas that may be issued to 10,000 per year. 8 U.S.C. § 1184 ("The number of aliens who may be issued visas or otherwise provided status as nonimmigrants under section 101(a)(15)(U) . . . in any fiscal year *shall* not exceed 10,000.") (emphasis added). The term "shall" here denotes a clear congressional directive, and based on this statutory cap, the USCIS lacks the authority to exceed it. *See Iddir v. INS*, 301 F.3d 492, 501 (7th Cir. 2002). As it is undisputed that the cap for this year has been reached, (*see* Pl.'s Br. at 4

n.4), it follows that there are simply no U-visas to issue, much less 80,000.[6] The Court is thus unable to provide relief, which vitiates Plaintiffs' standing in this respect.

Moreover, even if Plaintiffs had standing, their claims would still fail. To succeed on a claim for unreasonable delay under the APA or the Mandamus Act, a plaintiff must show (1) that the agency failed to take a clear, nondiscretionary act that it is required to take, (2) that the delay is unreasonable, and (3) that there is no other adequate avenue for relief. *Norton v. S. Utah Wilderness Alliance* ("*SUWA*"), 542 U.S. 55, 65 (2004); *Telecommunications Research and Action Center v. F.C.C.* ("*TRACC*"), 750 F.2d 70, 80 (D.C. Cir. 1984) (listing factors to consider when assessing reasonableness of a delay). Surely, an agency's delay in promulgating regulations qualifies as an action that may be compelled, *SUWA*, 542 U.S. at 65, but the delay here was one year, not eight years,[7] and Plaintiffs have failed to allege or explain why a one-year delay is unreasonable, which is fatal to their claim. *See SUWA*, 542 U.S. at 65; *TRACC,* 750 F.2d at 80. Plaintiffs' claim to compel the USCIS to issue 80,000 U-visas is therefore dismissed with prejudice, as it is both nonjusticiable and insufficient under Rule 12(b)(6).

To the extent that Plaintiffs also claim unreasonable delay in the processing of their U-visa applications, their case is similarly unavailing. Even assuming that the USCIS has a clear,

---

[6] *See also* USCIS, *USCIS Approves 10,000 U Visas for 6th Straight Fiscal Year*, http://www.uscis.gov/news/uscis-approves-10000-u-visas-6th-straight-fiscal-year (stating that the statutory cap of U-visas has been reached for 2015).

[7] Contrary to Plaintiffs' assertions, the Victims of Trafficking and Violence Prevention Act of 2000, Pub. L. 105-386, 114. Stat. 1464, did not direct the USCIS to promulgate U-visa regulations. It certainly contemplated a process for victims of serious crimes to obtain a U-visa, but the only rulemaking directive in the Act is entitled "trafficking victim regulations," which ordered the Attorney General promulgate similar "T-visa" regulations within 180 days of enactment. *Id.* The U-visa regulations, in contrast, were ordered to be promulgated by the Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. 109-162, 828, 119 Stat. 3066. Thus, the USCIS's deadline to promulgate regulations was July 4, 2006.

nondiscretionary duty to process U-visa applications in a timely manner,[8] Plaintiffs again fail to allege anything unreasonable about the delay. This is unsurprising considering the following undisputed facts: (1) the INA caps the number of U-visas that may be issued each year; (2) U-visa applicants on the waiting list are processed according to the date their petitions are filed; and (3) Plaintiffs have remained on the waiting list because there is a long line of applicants ahead of them. (Compl., ¶¶ 4-7.) Thus, while Plaintiffs' applications have surely been delayed, the Court has no basis for finding the delay unreasonable, which mandates dismissal under Rule 12(b)(6).

### (c)     Mootness and Plaintiffs' Claim for Parole

Alternatively to their claim for U-visas, Plaintiffs ask the Court to compel the USCIS to grant parole to their families, but this issue is now moot. After engaging in settlement discussions with USCIS, Plaintiffs applied for, and received, parole for their families on September 5, 2015. (*See* Dkt. #21.) There is accordingly no live controversy between the parties, and their claims under the APA and Mandamus act are dismissed as moot. By extension, the Court also dismisses Plaintiffs' claim under the Declaratory Judgment Act, since Plaintiffs no longer have an independent basis for federal jurisdiction. *See Ameritech Benefit Plan Comm. v. Commun. Workers of Am.*, 220 F.3d 814, 819 (7th Cir. 2000).

---

[8] Courts are again divided on this point, but this Court agrees with those that have found that the USCIS does, in fact, have a duty to adjudicate applications in a timely manner. *See, e.g., He v. Chertoff*, 528 F.Supp.2d 879 (N.D. Ill. 2008); *Khelashvili v. Dorochoff*, No. 07 C 2826, 2007 U.S. Dist. LEXIS 89718 (N.D. Ill. Dec. 6, 2007); *see also Subhan v. Ashcroft*, 383 F.3d 591,595 (7th Cir. 2004) ("[A] right to request relief implies a corresponding obligation to respond."). To hold otherwise would permit the USCIS to effectively skirt any claims for unreasonable delay under the APA or the Mandamus Act.

## CONCLUSION

The Court grants Defendants' motions to dismiss [14] and [21]. Plaintiffs' claim to compel the USCIS to issue 80,000 U-visas *nunc pro tunc* is dismissed with prejudice. Their claim for unreasonable delay regarding their U-visa applications is dismissed without prejudice. And their claim for their families' parole is dismissed as moot. Civil case terminated.

**SO ORDERED.**                               ENTERED:   October 13, 2015

_____
**HON. RONALD A. GUZMÁN**
**United States District Judge**